# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-2939

UNITED STATES OF AMERICA and
THE STATE OF COLORADO,

        Plaintiffs,

    v.

TCI PACIFIC COMMUNICATIONS, LLC,

        Defendant.

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Colorado ("State"), on behalf of the Colorado Department of Public Health and Environment ("CDPHE"), file this Complaint and allege as follows:

### NATURE OF ACTION

1.  This is a civil action pursuant to Sections 106, 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607(a) and 9613(g)(2), to require the taking of actions to abate the imminent and substantial endangerment at the Eagle Mine Superfund Site near Minturn, Colorado ("Site") and for recovery of response costs incurred by the

1

United States in responding to releases or threatened releases of hazardous substances at the Site. The United States and the State also seek a declaration of Defendant's liability pursuant to Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), for all unreimbursed future response costs to be incurred by the United States and the State in connection with Operable Unit 1 at the Site.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action and the parties hereto, pursuant to Sections 106, 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607(a) and 9613(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 139l(c), and 1395 and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to the claims in this action occurred in this district, and because the Site is located in this district.

## DEFENDANT

4.  Defendant TCI Pacific Communications, LLC ("TCI Pacific") is a Delaware corporation, in good standing, doing business in the State of Colorado.

5.  TCI Pacific is a successor to the Empire Zinc Company, a Colorado corporation that conducted mining activities at the Site beginning in approximately 1916. Empire Zinc Company was a subsidiary of the New Jersey Zinc Company, a New Jersey corporation ("NJZ") at this time. On February 25, 1966, NJZ merged with Gulf & Western Industries, Inc., a Michigan corporation ("G&W-MI"). In 1967, G&W-MI merged with Gulf & Western Industries, Inc., a Delaware corporation ("G&W-D"), with G&W-D being the surviving entity. In 1986, G&W-D merged with Gulf+Western, Inc., a Delaware

corporation ("G+W"), with G&W-D surviving but changing its name to G+W. On June 2, 1989, Paramount Communications, Inc., a Delaware corporation ("Paramount"), merged into G+W, with G+W surviving but changing its name to Paramount. On January 3, 1995, Paramount was merged into Viacom International Inc. ("Viacom"), with Viacom being the surviving corporation. Viacom later changed its name to TCI Pacific Communications, Inc. a Delaware corporation. In 2017, TCI Pacific Communications, Inc. changed its corporate structure from a corporation to a limited liability company incorporated in Delaware, changing its name to TCI Pacific Communications, LLC.

6. Defendant TCI Pacific Communications, LLC is a successor by merger to its predecessors' rights and liabilities at the Site.

7. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## THE SITE

8. The Eagle Mine Superfund Site is located approximately 5 miles south of Minturn, Colorado.

9. The Eagle Mine area ore deposits were first mined in the 1870s.

10. From approximately 1916 to 1983, Empire Zinc Company and its successors up to and including G&W, owned and operated the Eagle Mine and mined lead-zinc and copper-silver ores. From approximately 1929 to 1931, and then again from approximately 1941 to December 1977, lead-zinc ores were processed through an underground flotation mill in Belden, Colorado, which produced lead and zinc concentrates for shipment by rail to smelters. A tailings product was also discharged by gravity flow to disposal areas several

miles from the mine. Tailings were placed in the Old Tailings Pond from about 1929 to 1931 and again from about 1941 to 1946. Tailings were placed in the New Tailings Pond (now known as Consolidated Tailings Pond) from about 1946 to December 1977. Additionally, waste material from ore processing operations at the Eagle Mine was deposited in areas now known as the Roaster Piles.

11. In 1983, G&W-D sold the Eagle Mine property, which constitutes a portion of the Eagle Mine Superfund Site, to Mr. Glenn Miller. Mr. Miller conveyed a portion of the Eagle Mine property to Battle Mountain Corporation. No mining operations have been conducted at the Eagle Mine since 1984.

12. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054-21077.

## RESPONSE ACTIVITIES AND RELATED LITIGATION

13. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, the State conducted a Remedial Investigation in 1985 and a Feasibility Study in 1985. The State completed a Remedial Investigation ("RI") Report on December 2, 1985, and the State issued a Feasibility Study ("FS") Report on December 20, 1985. The State issued its Record of Decision for the Site on April 4, 1986.

14. The State and Defendant executed and lodged with this Court a Consent Decree on May 20, 1988, which was entered by the court on June 24, 1988. *State of Colorado v. Gulf & Western Industries, Inc.*, Civ. Action No. 83-C-2387. A Remedial Action Plan for the Site was a part of the 1988 State Consent Decree ("CD/RAP") and has

been amended from time to time. Pursuant to the CD/RAP, Defendant's predecessor performed certain work, including: implementation of a mine closure program to seal pathways from the mine workings and to grout fracture zones; construction of a groundwater extraction system to collect and pump contaminated groundwater from beneath the Consolidated Tailings Pile; construction of a groundwater diversion trench to direct the flow of clean groundwater away from the Consolidated Tailings Pile; construction of a system to collect seeps along Rock Creek; and installation and implementation of water quality monitoring.

15. In September 1990, EPA undertook a Feasibility Study Addendum ("FSA") to evaluate the remedial actions that had been taken at the Site pursuant to the CD/RAP and to determine if any additional remedial actions were necessary to protect human health and the environment from releases or threatened releases at the Site. The FSA was completed in June 1992.

16. As a result of the FSA, EPA determined that additional response actions were necessary to protect human health and the environment. The decision by EPA on the remedial action to be implemented at Operable Unit Number 1 of the Site is embodied in a Record of Decision ("ROD"), executed on March 29, 1993. Notice of the issuance of the ROD and a summary responding to public comments on the ROD were published in accordance with Section 117(b) of CERCLA, 42 U.S.C § 9617(b). The ROD created two operable units at the Site. Operable Unit 1 (OU1) is the focus of this Consent Decree's Statement of Work. OU1 is primarily media-based, focusing on protecting surface water at the Site by reducing metals loading to the Eagle River. On-going remediation within OU1

includes active engineered remedial features designed to capture and treat mine waste in surface and groundwater. From a land use perspective, the ROD cleanup achieved cleanup levels that were protective for trespasser and recreational use scenarios for the soil media.

17. On July 7, 1994, EPA issued a Unilateral Administrative Order ("1994 UAO") for Remedial Design and Remedial Action, EPA Docket No. CERCLA-VIII-94-19 to Paramount to conduct certain response actions at the Site. On May 30, 1995, EPA issued Amendment No. 1 to EPA Administrative Order for Remedial Design and Remedial Action, EPA Docket No. CERCLA-VIII-94-19.

18. The United States and Defendant's predecessor, Viacom International, executed and lodged with this Court a partial Consent Decree on June 12, 1996, which was entered by the Court on June 12, 1996. *United States v. Viacom International, Inc.*, Civ. Action No. 95-N-2360. A Statement of Work for the Site for Operable Unit 1 was a part of the 1996 Consent Decree ("CD/SOW") and has been amended from time to time.  The CD/SOW superseded the 1994 UAO.

19. After completion of the remediation required by the OU1 ROD, cadmium, copper and zinc concentrations in the Eagle River still exceeded levels deemed protective of aquatic life during the months of March and April.  In 2013, the Defendant completed a Focused Feasibility Study ("FFS") to evaluate additional remedial actions to protect human health and the environment from releases or threatened releases at the Site.

20. Additionally, in 1993, when EPA issued the ROD, arsenic was not detected in surface water samples, using laboratory techniques available at the time.  As a result, the ROD did not include arsenic as a contaminant of concern and did not include a remedial action

6

objective for arsenic.  Due to the discovery of arsenic in excess of the applicable water quality standard, the Defendant completed a Focused Feasibility Study Addendum ("FFSA") to address arsenic in 2015.

21. As a result of the FFS and FFSA, EPA and the State determined that additional response actions were necessary to protect human health and the environment. The decision by EPA and the State on the additional remedial action to be implemented at Operable Unit Number 1 of the Site is embodied in a Record of Decision Amendment ("ROD Amendment"), executed on September 28, 2017.  EPA published notice of the issuance of the ROD and a summary responding to public comments on the OU1 ROD Amendment in accordance with Section 117(b) of CERCLA, 42 U.S.C § 9617(b).

22. On May 30, 2018, EPA issued a Unilateral Administrative Order ("2018 UAO") for Remedial Design and Remedial Action pursuant to the ROD Amendment, EPA Docket No. CERCLA-08-2018-0007 to Defendant to conduct certain response actions at the Site regarding Operable Unit 1.

23. As a result of releases or threatened releases of hazardous substances at and from the Site, and incident to the response actions described above, the United States and the State have incurred response costs.

24. The United States and the State are continuing to incur response costs at the Site and expect to continue to incur response costs.

## FIRST CLAIM FOR RELIEF

25. The allegations contained in Paragraphs 1-24 are realleged and incorporated herein by reference.

26. Defendants predecessors were "owners" and "operators" of the Site at the time of disposal of hazardous substances at the Site within the meaning of Sections 101(20)(A) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20)(A), 9607(a)(2).

27. Pursuant to Section 107(a) of CERCLA, Defendant is liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . . ." 42 U.S.C. § 9607(a).

28. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

29. Hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), were disposed of at the Site at times relevant to this action.

30. There have been and continue to be releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), or the threat of releases of hazardous substances into the environment at or from the Site.

31. The actions taken by the United States and the State in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25). The United States and the State have incurred costs in performing those response actions.

32. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendant is jointly and severally liable to the United States and the State for all costs incurred and to be incurred by the United States and the State with respect to the Site, including prejudgment interest on all such costs.

## SECOND CLAIM FOR RELIEF

33. The allegations contained in Paragraphs 1-32 are realleged and incorporated herein by reference.

34. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

35. The release or threatened release of hazardous substances at or from this Site previously alleged may present an imminent and substantial endangerment to the public health or welfare or the environment within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

36. Defendant is jointly and severally liable under Section 106(a) of CERCLA, 42 U.S.C § 9606(a), for taking such actions as may be necessary to abate the imminent and substantial endangerment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United States of America and the State of Colorado pray that this Court:

1. Enter judgment in favor of the United States and the State and against Defendant, jointly and severally, for costs incurred by the United States, including prejudgment interest, with respect to response actions already taken at the Site;

2. Enter a declaratory judgment on liability to the United States and the State for further response costs that will be binding in any subsequent action by the United States or the State against the Defendant to recover any further response costs related to the Eagle Mine Site;

3. Enter judgment against the Defendant, pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), ordering the Defendant to undertake response action in conformity with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 (as amended) to abate the imminent and substantial endangerment at the Site; and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


/s/ James D. Freeman
JAMES D. FREEMAN
Environmental Enforcement Section
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1489
Fax: (303) 844-1350
Email:  James.Freeman2@usdoj.gov

OF COUNSEL:

KAYLEEN CASTELLI
Senior Assistant Regional Counsel
Legal Enforcement Branch, Office of Regional Counsel
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202

FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General
State of Colorado

/s/ Jason E. King
JASON E. KING
Senior Assistant Attorney General
Hazardous & Solid Waste/CERCLA Litigation
    Unit
Natural Resources and Environment Section
Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Telephone: (720) 508-6283
Fax: (720) 508-6039
Email: jason.king@coag.gov